PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) *(pro hac vice)*
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>ACIS CAPITAL MANAGEMENT, L.P., ACIS CAPITAL MANAGEMENT GP, LLC,<br><br>　　　　　　　　　　Debtors. | § § § § § § § § § | Chapter 11<br><br>Case No. 18-30264-sgj11<br>Case No. 18-30265-sgj11<br><br>(Jointly Administered Under Case No. 18-30264-sgj11) |
| ACIS CAPITAL MANAGEMENT, LP., ACIS CAPITAL MANAGEMENT GP, LLC, Reorganized Debtors,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>JAMES DONDERO, FRANK WATERHOUSE, SCOTT ELLINGTON, HUNTER COVITZ, ISAAC LEVENTON, JEAN PAUL SEVILLA, THOMAS SURGENT, GRANT SCOTT, HEATHER BESTWICK, WILLIAM SCOTT, AND CLO HOLDCO, LTD.,<br><br>　　　　　　　　　　Defendants. | § § § § § § § § § § § § § § § § | Adversary Proceeding No. 20-03060-sgj |

# HIGHLAND CAPITAL MANAGEMENT, L.P.'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO
# ACIS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

Highland Capital Management, L.P. ("Highland") respectfully submits this *Memorandum of Law* in support of its objection (the "Objection") to *Acis' Motion to Compel Compliance with Subpoena* [Docket No. 89] (the "Motion")[1] filed in the above-referenced adversary proceeding (the "Adversary Proceeding") and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

1. At the heart of the Motion are two simple questions raised by Rule 26: (a) how much discovery is needed to prove causes of action that have been the subject of numerous prior proceedings, evidentiary hearings, and court orders; and (b) how onerous a burden is a litigant allowed to impose on third-parties in pursuit of that discovery?

2. Highland is not a party to the Adversary Proceeding, another front in the internecine war between James Dondero and Josh Terry. Instead, it is a third-party witness, having resolved and settled all claims and disputes with Mr. Terry and the Acis entities he acquired out of the above-referenced bankruptcy case. Yet, for the second time,[2] Acis is attempting to pull Highland back into the morass that is the never-ending litigation between Mr. Dondero and Mr. Terry. The one thing Highland and Acis agree on is that "enough is enough." Motion at 1.

---

[1] All capitalized terms used but not defined herein have the meanings given to them in the Motion. Acis Capital Management, L.P. and Acis Capital Management GP, LLC (collectively, "Acis") filed the Motion on December 13, 2022. Later that same day, Acis filed its *Motion to Compel Compliance with Subpoena* [Docket No. 90] (the "Subsequent Motion"). Other than attaching the exhibits to the *Appendix in Support of Acis' Motion to Compel Compliance with Subpoena* [Docket No. 90-2] included with the Subsequent Motion, the Motion and Subsequent Motion appear identical in substance. Ostensibly, the Subsequent Motion supersedes the Motion, but there is no clear indication in the Subsequent Motion stating as much. Accordingly, out of an abundance of caution, Highland is filing its Objection to preserve its objections to the relief requested in the Motion should there be any contention that the Motion remains a live request for relief.

[2] In November 2021, Acis usurped Highland's rights by improperly attempting to re-assert previously dismissed claims against Scott Ellington and Isaac Leventon on the grounds that they allegedly violated their agreement with Highland. *See Acis' Motion to Amend Order and for Attorneys' Fees* [Docket No. 58] (the "Amendment Motion"). Because the Amendment Motion constituted a breach of Acis' settlement agreement with Highland and encroached upon Highland's exclusive rights in a way that exposed Highland to potential liability (*e.g.*, indemnity claims), Highland immediately protested. Ultimately, Acis withdrew the Amendment Motion, but only after Highland was forced to spend time, money, and effort addressing its improprieties. *See Acis' Withdrawal of Its Motion to Amend Order and Request for Attorneys' Fees* [Docket No. 60] and Highland's joinder thereto [Docket No. 61].

2

3. One would never know it from the Motion, but last September, in response to Acis' broad subpoena, Highland produced 204,955 documents (including 84,819 e-mails), constituting 1,095,899 pages of information. In this context, Acis' assertion that Highland is attempting "to circumvent the discovery process" is unsupportable. Stripped of the hyperbole, the Motion presents three narrow issues, each of which is addressed below:

- whether the starting date should be January 1, 2016 or September 1, 2017;
- whether Highland can protect privileged communications; and
- whether the search term "HarbourVest" is overly broad.[3]

4. Highland's goals here are simple: (a) avoid unnecessary, time-consuming, and costly burdens; (b) protect the Reorganized Debtor's privilege; and (c) obtain a final order on the Motion that fully resolves any remaining obligation Highland may have to provide discovery in connection with the Adversary Proceeding.

**BACKGROUND FACTS**

**A.** **Acis Has Been Litigating the Fraudulent Transfers at Issue for Five Years**

5. According to Acis, "[a]fter Terry received the Arbitration Award on October 20, 2017, Dondero and the other Defendants immediately began work to systematically transfer the assets of Acis LP to the Highlands" in order to "denude Acis LP of value and make the Debtor 'judgment proof.'" *Original Complaint* [Docket No. 1] ("Complaint") ¶ 72. In its Complaint, Acis described a litany of alleged fraudulent transfers (collectively, the "Fraudulent Transfers") that became the foundation for its claims. *Id*. ¶¶ 72-106.

6. But this is not the first time that Acis and/or its owner, Joshua Terry ("Mr. Terry"), have relied on the Fraudulent Transfers to obtain judicial relief. In fact, Mr. Terry and

---

[3] *Id*. at 5.

Acis have been beating the Fraudulent Transfer drum for five years now in numerous contexts (collectively, the "Prior Proceedings"). For example, since January 2018, Acis has relied on the Fraudulent Transfers with respect to at least the following:

- Mr. Terry sought injunctive relief from a Texas state court based in substantial part on the Fraudulent Transfers;[4]

- Mr. Terry obtained an order modifying section 303 of the Bankruptcy Code, and preventing the transfer of assets, based in substantial part on the Fraudulent Transfers;[5]

- Mr. Terry defeated Acis' motion to dismiss the involuntary petition filed against it, in part, because the "Alleged Debtors have engaged in a game of 'catch me if you can' involving numerous fraudulent transfers,"[6]

- Mr. Terry obtained an order appointing a chapter 11 trustee based in substantial part on the Fraudulent Transfers;[7] and

- The Acis Plan was confirmed after this Court found that the Highland Entities Adversary Proceeding (as defined) was "essentially a multi-faceted fraudulent transfer action" that "justifie[d] the temporary injunction that is a critical part of the Plan" because "the evidence [wa]s rather startling on this point."[8]

---

[4] *See Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued After Trial on Contested Involuntary Bankruptcy Petitions*, Bankr. Docket No. 118 ¶¶ 12, 15.

[5] *Emergency Motion of Petitioning Creditor to Abrogate or Modify 11 U.S.C. § 303(f), Prohibit Transfer of Assets, and Impose, Inter Alia, 11 U.S.C. § 363*, Docket No. 3 (the "Motion to Abrogate") (motion seeking to prevent further fraudulent transfer of assets); Bankr. Docket No. 31 (order granting the relief requested).

[6] *Joshua N. Terry's Objection to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages*, Bankr. Docket No. 37 ("Dismissal Objection") ¶¶ 1, 10-23. *See also Petitioning Creditor Joshua N. Terry's Brief in Support of: (I) the Involuntary Petitions and (II) Objection to Joint Motion of Acis Capital Management, L.P. and Acis Capital Management GP, LLC to Dismiss Involuntary Petitions and Request for Award of Fees, Costs, and Damages*, Bankr. Docket No. 62 ¶¶ 8-9 (alleging that the Alleged Debtors were unable to pay their debts as they became due because of the Fraudulent Transfers).

[7] *Emergency Motion for an Order Appointing a Trustee for the Chapter 11 Estates of Acis Capital Management, L.P. and Acis Capital Management GP, LLC Pursuant to Bankruptcy Code Section 1104(a)*, Bankr. Docket No. 173 ("Trustee Motion") ¶¶ 6-13.

[8] *Bench Ruling and Memorandum of Law in Support of: (A) Final Approval of Disclosure Statement; and (B) Confirmation of Chapter 11 Trustee's Third Amended Joint Plan*, Motion Ex. 2 at 19-23.

7. And, of course, Acis' primary claim in the Highland bankruptcy case ("Claim 23") was based in substantial part on Highland's alleged liability for the Fraudulent Transfers. Claim 23 was filed as a general unsecured claim in the amount of $75 million and attached yet another Acis complaint asserting claims relating to the Fraudulent Transfers. Claim 23 was later the subject of a broader settlement whereby Claim 23 was allowed in the amount of $23 million as a general unsecured claim. Highland Docket No. 1302 (order approving settlement in Highland bankruptcy case).[9]

**B.    The Current Adversary Proceeding for Fraudulent Transfers**

8. In April 2020, at about the same time that Acis filed Claim 23, Acis (by then, under Mr. Terry's control) commenced this Adversary Proceeding against James Dondero ("Mr. Dondero") and ten (10) other defendants for their alleged liability arising from, among other things, the Fraudulent Transfers.

9. Over the years, Acis apparently reached settlements with all but three of the defendants, such that by October 2021, Acis informed this Court that:

> This case now only concerns Dondero's efforts to fraudulently transfer Acis' assets away from Acis and Scott and CLO Holdco's involvement therewith.

*Acis' Motion for New Scheduling Order*, Docket No. 56 at 4.

10. Thus, Acis continues to litigate the same Fraudulent Transfer issues—now, against just three remaining defendants—that have been the subject of the Prior Proceedings and that have been the foundation of substantial relief already obtained by Mr. Terry and Acis,

---

[9] The foregoing is not intended to be an exhaustive list of all of the relief Mr. Terry and Acis sought on the basis of the Fraudulent Transfers as this Court is intimately familiar with those matters having issued prior discovery and scheduling orders, ruled on motions to compel and for protective orders, and overseen numerous evidentiary hearings and arguments where the Fraudulent Transfers were at issue.

5

including an agreed-upon, allowed claim for $23 million on the basis that Highland was a joint tortfeasor.

C.   **Acis' Subpoena and Related Matters**

11.   In May 2022, Acis served its initial subpoena (the "Initial Subpoena"). Motion Ex. 4. Notwithstanding all of the Prior Proceedings, the Initial Subpoena was incredibly overbroad, including (a) fifty-one (51) enumerated requests; (b) seeking *all* emails and text messages from 21 separate custodians (including numerous attorneys) using, among other things, the word "Acis;" and (c) covering a period of more than six years (from January 1, 2016 to the present). As the Motion shows, the parties engaged in good-faith discussions to address the unreasonably overbroad requests.

12.   Highland acknowledges that it reached the understandings described in the Motion and that the Amended Subpoena was based on those understandings. Unfortunately, Highland ran the searches *after* reaching those understandings rather than before. It was only after running the searches that Highland realized the enormity of the task. Yet, in good faith, Highland (a non-party) produced over a million pages of information while establishing the limited boundaries that are the subject of this Motion.

13.   Relatedly, Highland also acknowledges that it offered to waive the attorney-client privilege up until October 19, 2019 (*i.e.*, Highland's petition date) because—by agreement with Mr. Dondero and others and pursuant to a Court Order—it had already done so, at least to an extent. *See Agreed Protective Order, In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj (Bankr. N.D. Tex.), Adv. Pro. 21-03076-sgj, Docket No. 202 ¶ 13 ("Prior Privilege Waiver"). Upon review, however, Highland became concerned that the Prior Privilege Waiver was limited to the Defendants in that action and did not want to create any risk that Mr. Dondero (or any of his affiliates or surrogates) would concoct some theory (however baseless) that Highland

6

somehow breached a duty by extending the Prior Privilege Waiver to Mr. Terry and Acis. This is not obstruction, but common sense—particularly in these cases.

14. Notably, much of Acis' Motion is directed to "waiver" arguments rather than the scope and propriety of the requests. But it is indisputable that Acis did nothing in reliance on the alleged "agreements" and would be in the same position today had Highland immediately lodged its objections—only without the benefit of over a million pages of documents.

## ARGUMENT

**A.    Rule 26**

15. Rule 26 of the Federal Rules of Civil Procedure (made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7026) provides enumerated limits on discovery, three of which are applicable here. FED. R. CIV. P. 26 (b) ("Rule 26"). Under Rule 26, discovery may be sought provided that: (a) it is relevant to any party's claim or defense, (b) it is proportional to the needs of the case, and (c) the burden and expense of the proposed discovery outweighs its likely benefit. *Id*.

**B.    The Date Range Demanded by Acis Is Not Reasonable Under Rule 26**

16. Highland has produced all responsive, non-privileged documents from September 1, 2017 through October 16, 2019—a period of more than two years. Nevertheless, Acis insists that the relevant period begin on January 1, 2016, expanding the relevant period by 20 months. The Court should reject Acis' Motion in this regard for three reasons.

17. ***First***, by Acis' own repeated assertions, the extended period is not relevant to Acis' claims. Acis has stated time and again that Highland "began work" on the Fraudulent Transfers *after* Mr. Terry received his arbitration Award on October 20, 2017.[10]

---

[10] *See, e.g.*, Complaint ¶ 72 ("After Terry received the Arbitration Award on October 20, 2017, Dondero and the other Defendants immediately ***began work*** to systematically transfer the assets of Acis LP to the Highlands" in order to

18. ***Second***, the extended period sought by Acis is not proportional to the needs of the case. Given the extensive litigation concerning the Fraudulent Transfers in the Prior Proceedings, the substantial relief previously granted to Acis on the basis of the evidence it adduced concerning the Fraudulent Transfers, and the enormous document production already provided, Acis' demand to extend the relevant period by 20 months is not proportional to the needs of the case.

19. ***Finally***, the burden or expense of expanding the relevant period by an additional 20 months outweighs its likely benefit. Simply put, how much more evidence can Acis possibly need given the relief it has already obtained and the fact that it has been litigating this issue for five years? And why continue to burden a third-party that, in good faith, has already produced over 1 million pages of documents and whose modest objections surely would have been sustained had it rushed to court for a protective order?

## C. Privilege Issues

20. The privilege issue is straight-forward. Notwithstanding the Shared Services Agreement, no attorney employed by Highland was engaged as "Acis' counsel." They simply provided services on behalf of their employer (Highland) pursuant to a Shared Services Agreement. But even assuming, *arguendo*, that Mr. Ellington, Mr. Leventon, and other attorneys were, in fact, acting as Acis' counsel when doing work on behalf of Acis, that does not mean that ***all*** work performed by those individuals was in that capacity.

21. There are over 27,000 emails to or from a Highland lawyer during the period September 1, 2017 through October 16, 2019 that contain the word "Acis" or are otherwise

---

"denude Acis LP of value and make the Debtor 'judgment proof.'") (emphasis added); Motion to Abrogate ¶ 2 (same); Dismissal Objection ¶¶ 10-23 (listing alleged fraudulent transfers, all of which occurred after the arbitration award was issued on October 20, 2017); Trustee Motion ¶¶ 6-13 (same).

8

responsive to Acis' subpoena. Reviewing and separating those created "on behalf of Acis" from those created on behalf of Highland would take an incalculable amount of time, money, and effort (and Acis will presumably demand a privilege log) that cannot possibly be mandated by Rule 26.

22. There are only three ways to solve this dilemma: (a) deny the Motion on this point, (b) grant the Motion, but only to the extent Acis solely bears the total cost and expense of the review (and the creation of a privilege log); or (c) the Court finds and determines that the Prior Privilege Waiver applies in this case and orders Highland to produce all of the documents without a privilege review.

D. **HarbourVest**

23. As this Court is aware, HarbourVest and its investment, claims, and settlement have been the subject of much litigation in the Acis and Highland bankruptcy cases. Indeed, HarbourVest has been deposed numerous times in both cases. HabourVest is not alleged to have played any role in the Fraudulent Transfers.

24. For these reasons, searching for, and producing, documents with the word "HarbourVest" is (a) irrelevant to Acis' claims, (b) not proportional to the needs of the case, and (c) imposes burdens and expenses on Highland that outweigh its likely benefit. *See* FED. R. CIV. P. 26.

E. **Highland's Objections Are Not Waived**

25. Contrary to Acis' unreasonable and conclusory contention that "all Highland's objections to the Amended Subpoena are waived and all responsive documents must be produced," Motion at 6, Highland did not waive its objections to the subpoena. As discussed *supra*, the subpoena is overly broad on its face and places a significant burden on Highland, a non-

9

party, to the proceeding.[11] At all relevant times, Highland has acted in good faith to satisfy its discovery obligations, including by communicating with counsel for Acis and producing over one million pages of information to Acis in response to the subpoena. Therefore, the present circumstances excuse any untimeliness. *See, e.g., Am. Fed'n of Musicians of the U.S. and Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 47 (N.D. Tex. 2015) (excusing non-party's failure to properly object to subpoena, noting that "circumstances warranting consideration of objections have included those where counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena," and where "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery or (2) the subpoenaed witness is a non-party acting in good faith") (internal quotations omitted); *Sines v. Kessler*, 325 F.R.D. 563, 566 (E.D. La. 2018) ("untimely objections may be excused when, for example, a subpoena is overly broad on its face or places a significant burden on a non-party"). Acis' waiver argument should therefore be rejected.

26. For the foregoing reasons, Highland respectfully requests that the Court deny the Motion.

*[Remainder of Page Intentionally Blank]*

---

[11] As this Court knows, Highland has only approximately ten (10) employees engaged in executing the asset-monetization plan, defending against the relentless litigation imposed by Mr. Dondero and his affiliates, and trying to collect on promissory notes and other amounts due from Mr. Dondero and some of those same affiliates. In this context, the burdens being imposed on Highland are real and considerable.

| | |
|---|---|
| Dated: January 13, 2023 | **PACHULSKI STANG ZIEHL & JONES LLP**<br><br>Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)<br>John A. Morris (NY Bar No. 2405397) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)<br>10100 Santa Monica Boulevard, 13th Floor<br>Los Angeles, CA  90067<br>Telephone: (310) 277-6910<br>Facsimile:  (310) 201-0760<br>Email:      jpomerantz@pszjlaw.com<br>                 jmorris@pszjlaw.com<br>                 gdemo@pszjlaw.com<br>                 hwinograd@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Zachery Z. Annable*<br>Melissa S. Hayward (Texas Bar No. 24044908)<br>Zachery Z. Annable (Texas Bar No. 24053075)<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Telephone: (972) 755-7100<br>Facsimile: (972) 755-7110<br>Email:      MHayward@HaywardFirm.com<br>                 ZAnnable@HaywardFirm.com<br><br>*Counsel for Highland Capital Management, L.P.* |