Joseph Y. Ahmad – Texas Bar No. 00941100
Shawn M. Bates – Texas Bar No. 24027287
Alex Dvorscak – Texas Bar No. 24120461
Thomas Cooke – Texas Bar No. 24124818
**AHMAD, ZAVITSANOS & MENSING, PLLC**
1221 McKinney St. Suite 2500
Houston, Texas 77010
(713) 655-1101 Telephone
(713) 655-0062 Facsimile
joeahmad@azalaw.com
sbates@azalaw.com
advorscak@azalaw.com
tcooke@azalaw.com

**COUNSEL FOR ACIS CAPITAL MANAGEMENT, L.P.
and ACIS CAPITAL MANAGEMENT GP, LLC
PLAINTIFFS AND REORGANIZED DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 18-30264-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, | § | **(Jointly Administered Under Case No.** |
| | § | **18-30264-SGJ-11)** |
| Debtors. | § | |
| | § | **Chapter 11** |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, Reorganized Debtors, | § | **Adversary No. 20-03060-SGJ** |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| JAMES DONDERO, FRANK | § | |
| WATERHOUSE, SCOTT ELLINGTON, | § | |
| HUNTER COVITZ, ISAAC LEVENTON, | § | |
| JEAN PAUL SEVILLA, THOMAS | § | |
| SURGENT, GRANT SCOTT, HEATHER | § | |
| BESTWICK, WILLIAM SCOTT, AND | § | |
| CLO HOLDCO, LTD., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Acis Capital Management, L.P. and Acis Capital Management GP, LLC (collectively, "Acis," "Debtors," or "Plaintiffs") hereby file this response to Defendant James Dondero's Motion to Dismiss Portions of Plaintiffs' First Amended Complaint (" Dondero's Motion"), Dkt. 115. The Motion lacks merit and should be denied.

Dondero's Motion argues that Plaintiffs' fraudulent transfer claims must be dismissed because (1) Plaintiffs' Amended Complaint fails to allege that Defendant Dondero was a transferee of the Fraudulent Transfers; and (2) Plaintiffs' fraudulent transfer claims are barred by the statute of limitations and statute of repose.[1] Both these arguments are wrong.

Defendant's first argument fails because Plaintiffs explicitly allege not only that Dondero fraudulently transferred Acis' assets to entities he owned, but also that Dondero directed the transfers in order to avoid liability for a debt. Because these allegations plainly survive Rule 12(b)(6) scrutiny, Dondero's Motion instead attacks the ***evidence underlying*** the allegations. This is improper. Rule 12(b)(6) motions are decided on pleadings, not evidence. Moreover, by design or neglect, Dondero's Motion misrepresents the evidence and even misuses the words of this Court to suggest that this Court made factual findings it never made.

Dondero's second argument fails because Plaintiffs' fraudulent transfer claims are predicated on the same "conduct, transaction, or occurrence" described in Plaintiffs' Original Complaint. Therefore, under Federal Rule of Civil Procedure 15, Plaintiffs' fraudulent transfer claims "relate back" to the date of the Original Complaint.

Dondero's Motion to Dismiss lacks merit and should be denied.

---

[1] Dkt. 116, Brief in Support of Defendant James Dondero's Motion to Dismiss Portions of Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012 ("Dondero's Brief"), p. 5.

2

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed suit against Defendant James Dondero on April 11, 2020, alleging that Defendant had "orchestrated a massive scheme to fraudulently transfer Acis's assets" to ensure that Acis's ousted co-founder "would collect nothing for his hard-fought Arbitration Award" against Acis.[2]

On January 17, 2024, Plaintiffs sought leave to amend their complaint to seek the avoidance of the fraudulent transfers alleged in their Original Complaint.[3] Dondero represented that he was unopposed, *i.e.*, he did not raise any of the typical arguments against granting leave to amend such as prejudice, undue delay, or futility. Instead, a month later, Dondero filed the instant Motion to Dismiss Portions of Plaintiffs' First Amended Complaint, arguing that Plaintiffs' fraudulent transfer claims are "(1) asserted against a non-transferee; and (2) barred by the statute of limitations or statute of repose under applicable law."[4] Plaintiffs hereby file their response.

## II.     APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move that the Court dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) Motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). In other words, the complaint "must contain . . . sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009). "A claim has facial

---

[2] Dkt. 1, Plaintiffs' Original Complaint, p. 2 ¶ 1.

[3] Dkt. 109, Plaintiffs' Unopposed Motion for Leave to Amend Complaint.

[4] Dkt. 116, Defendant's Brief, p. 5.

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts deciding on Rule 12(b)(6) motions may only consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

### III.    ARGUMENT

**A.    Plaintiffs have alleged that Dondero was a transferee and made the Fraudulent Transfers for his own benefit.**

Dondero argues that Acis fails to allege that Dondero was a transferee or that the Fraudulent Transfers were made for Dondero's benefit.[5] Dondero is wrong. Plaintiffs' Amended Complaint explicitly alleges (1) that Dondero directed the Fraudulent Transfers to be received by entities that he owned, and (2) that Dondero directed the Fraudulent Transfers to ensure that he remained in control of Acis's business and that he, as a stakeholder of Acis, would avoid paying Josh Terry's arbitration award. Accordingly, Plaintiffs' Amended Complaint sufficiently alleges that Dondero was a transferee and that the Fraudulent Transfers were made for his benefit.

Because Defendant cannot assail the sufficiency of Plaintiffs' pleadings, he instead assails the ***evidence*** underlying the pleadings. This is improper. Rule 12(b)(6) motions are decided on allegations, not proof. Defendants' evidentiary arguments therefore do not warrant consideration.

**1.    Plaintiffs allege that Dondero owned the entities that received Fraudulent Transfers.**

Dondero argues that "Acis does not allege that any assets were transferred to him."[6] Dondero is wrong. Plaintiffs allege that Dondero directed each of the Fraudulent Transfers to

---

[5] *See* Dkt. 116, Defendant's Brief, pp. 8-11.

[6] *Id.* at 9 ¶ 11.

entities that he owned and controlled. In fact, Plaintiffs allege that there was such an identity of

ownership and control between Dondero, Highland Capital, and its affiliates (the "Highlands")

that Dondero was Highlands' alter ego. Accordingly, Plaintiffs allege that any Fraudulent Transfer

to the Highlands was ultimately a transfer to Defendant James Dondero.

Section 550(a) of the Bankruptcy Code permits avoidance of fraudulent transfers from

"(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made;

or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550. In other

words, Section 550(a)(1) allows for recovery from "immediate transferees," and Section 550(a)(2)

allows for avoidance of fraudulent transfers from "subsequent transferees." *See Matter of Criswell*,

102 F.3d 1411, 1418 (5th Cir. 1997).

Section 550(b) of the Bankruptcy Code protects subsequent transferees who in good faith

pay "reasonably equivalent value" for the transferred asset. *See id.* But a transferee cannot be a

"good faith transferee" if he knows that the transfer is fraudulent. *See Spring St. Partners-IV, L.P.

v. Lam*, 730 F.3d 427, 439-440 (5th Cir. 2013) (evidence that subsequent transferee knew that

transferor made transfer "with actual intent to hinder, delay, or defraud" plaintiff precluded a "good

faith transferee" defense).

Similarly, the shareholder or beneficial owner of an entity may be held liable for that

entity's debts if the entity was "used for the purpose of perpetrating and did perpetrate an actual

fraud on the obligee primarily for the direct personal benefit of the [entity's] holder, beneficial

owner, subscriber, or affiliate." *See Thomas v. Hughes*, 27 F.4th 995, 1016 (5th Cir. 2022). Under

Delaware law, courts may pierce an entity's corporate veil and find alter ego where the pleaded

facts support an inference that the entity is a "sham entity designed to defraud investors and

creditors" or that the entity "exist[s] for no other purpose than as a vehicle for fraud." *See In re*

*The Heritage Org., L.L.C.*, 413 B.R. 438, 510-511 (Bankr. N.D. Tex. 2009) (internal quotations and citations omitted).

Plaintiffs' First Amended Complaint alleges that Dondero directed the following fraudulent transfers (the "Fraudulent Transfers"):

    a.  Payment of *ultra vires* Expense Overpayments to Highland Capital Management, L.P. ("Highland Capital") January 2016 through May 2016;[7]

    b.  Modifications to Acis's Sub-Advisory Agreements (increasing the fees Acis paid to Highland Capital): July 2016;[8]

    c.  Diverting a portion of Acis's Performance Allocation to CLO HoldCo upon the wind-up of CLO Value Fund;[9]

    d.  The ALF PMA Transfer to Highland Advisor: October 2017;[10]

    e.  The ALF Share Transfer to Highland Funding: October 2017.[11]

    f.  The Note Transfer to Highland Management; November 2017.[12]

    g.  The Transfer of the 2017-7 Equity and 2017-Agreements to Highland Holdings; December 2017.[13]

Plaintiffs' First Amended Complaint alleges that Dondero owned and/or controlled each of the entities that received the Fraudulent Transfers.

---

[7] *See* Dkt. 111, Plaintiffs' First Amended Complaint, p. 16 ¶ 47. Although the *ultra vires* expense overpayments began in 2013, the statute of limitations on fraudulent transfer actions only permits avoidance of transfers made within two years of the bankruptcy.

[8] *See id.* at 19 ¶ 57.

[9] *See id.* at 17 ¶ 50.

[10] *See id.* at 25 ¶ 71.

[11] *See id.* at 26-27 ¶ 78.

[12] *See id.* at 28 ¶ 81.

[13] *See id.* at 29-30 ¶¶ 85-88.

Defendant states that "[Plaintiff] acknowledges in its pleading that Defendant was never an owner of any of the Highlands."[14] This statement is false—Plaintiffs have never acknowledged any such thing. To the contrary, Plaintiffs' First Amended Complaint alleges that after Josh Terry's termination in June 2016, Dondero and Okada were "the only equity **owners** of Highland Capital"[15] and "the equity **ownership** of Acis and Highland Capital were now the same (Dondero and Okada), so to them, it did not matter how much Highland Capital charged Acis—it was 'left pocket/right pocket.'"[16]

Plaintiffs could not have been more explicit: at the time of the Fraudulent Transfers, Dondero owned Highland Capital. Accordingly, when Plaintiffs allege that Dondero directed the fraudulent transfer of Acis assets to Highland Capital—specifically, by way of the *ultra vires* overpayments and the modifications to the Sub-Advisory Agreement—Plaintiffs are alleging that Dondero fraudulently transferred Acis assets to an entity that he owned and controlled. When Dondero transferred an asset to Highland Capital, he transferred it to **himself** as Highland Capital's beneficial owner.

Plaintiffs allege that Highland Capital, in turn, owned Highland Advisor (recipient of the ALF PMA Transfer),[17] that "Highland Capital is the sub-advisor for Highland Advisor, and thus is the party actually in control of Highland Funding's [recipient of the ALF Share Transfer] assets[,]"[18] and that "all of Highland Funding's subordinated notes . . . are physically held at and

---

[14] *See* Dkt. 116, Defendant's Brief, p. 11 ¶ 15; *see also id.* at 13 ¶ 19 ("Acis does not allege that Defendant was (and, in fact, admits that he is not) a shareholder, member or owner of any of the Highlands.").

[15] *See* Dkt. 111, Plaintiffs' First Amended Complaint, p. 14 ¶ 40 (emphasis added)

[16] *See id.* at 18 ¶ 53 (emphasis added).

[17] *See id.* at 25 ¶ 72; *see also* p. 46, ¶ 144 ("[T]he ALF PMA Transfer and ALF Share Transfer went to Highland Advisor, of which Dondero was President, and which was owned by Dondero's alter ego, Highland Capital.").

[18] *Id.* n.17.

are pledged to NexBank, a Dallas bank that is also an affiliate of Highland Capital."[19] Plaintiffs

further allege that "numerous Highland Capital executives . . . as well as Highland Capital itself,

received Highland Funding securities in connection with [the private placement of Highland

Funding's equity, including equity acquired in the ALF Share Transfer]."[20]

Plaintiffs further allege that Highland Capital owned Highland Management (recipient of

the Note Transfer)[21] and that Dondero directed Highland Holdings (recipient of Acis CLO 2017-

7) to enter an agreement that

> allowed Highland Capital to sub-advise and manage CLO 2017-7 and get paid the
> management fees that otherwise would have flowed to Acis LP. So, like the
> numerous transfers before it, Dondero/Highland Capital effectuated the transfer of
> the 2017-7 Agreements and 2017-7 Equity to cut out Acis LP, while
> Dondero/Highland Capital stayed in complete control of CLO 2017-7 and its stream
> of management fees.

Dkt. 111, Plaintiffs' First Amended Complaint, p. 30 ¶ 88.

Defendant's assertion that "Acis does not allege that any assets were transferred to

Defendant"[22] is simply wrong. Plaintiffs' First Amended Complaint alleges that all the Fraudulent

Transfers directed Acis's assets to entities that Dondero owned and controlled, whether directly or

through Highland Capital.[23]

Moreover, Plaintiffs allege that Dondero established Highland Holdings, Highland

Management, and Highland Funding specifically to receive stolen Acis assets and that Dondero

---

[19]  *Id.*

[20]  *Id.* at 27 ¶ 80 n.20.

[21]   *Id.* at 33-34 ¶ 95.

[22]   Dkt. 116, Defendant's Brief, p. 9 ¶ 11.

[23]   Dondero's Motion also attempts to rely on the fact that Acis settled with and released Highland, as a basis to
allege that the "Purported Transferees" are not before this Court. *See, e.g.,* Motion at 9. As set forth above, that
is plainly false, as Plaintiffs have alleged in detail that Dondero was the ultimate recipient of and economic
beneficiary of the fraudulent transfers.

"slyly chose entities in offshore jurisdictions that would be hard for a judgment creditor to reach."[24]
In other words, Plaintiffs allege that the immediate transferees of the ALF Share Transfer, the ALF
PMA Transfer, the Note Transfer, and the CLO 2017-7 Equity and Agreement Transfers, were all
sham entities that Dondero established as vehicles for perpetrating actual fraud. Accordingly,
Plaintiffs allege that Dondero was, at all relevant times, the alter ego of these entities. *See Thomas*,
27 F.4th at 1016; *In re Heritage*, 413 B.R. at 510-511.

Plaintiffs have alleged facts that, if true, would be sufficient to show that Defendant was a
transferee as to the Fraudulent Transfers and that he did not receive the transfers in good faith.
Dondero's Motion lacks merit and should be denied.

### 2. Plaintiffs allege that Dondero made the Fraudulent Transfers to avoid paying a debt.

Dondero argues that "Acis has failed to allege that the [Fraudulent] Transfers were made
for the benefit of Defendant."[25] Dondero is wrong. Plaintiffs explicitly allege that Dondero directed
the fraudulent transfers so that he, as a stakeholder in Acis, would not lose any money when Acis
was forced to pay a nearly $8 million Arbitration Award and "to ensure that Acis LP's very valuable
business as portfolio manager was taken over by other Highlands and remained under Dondero's
control."[26]

As this Court has held:

The paradigm 'entity for whose benefit such transfer was made' is a guarantor or
debtor . . . Section 550(a)(1) recognizes that debtors often pay money to A for the
benefit of B; that B may indeed have arranged for the payment (likely so if B is an
insider of the payor); that but for the payment, B may have had to make good on
the guarantee or pay off his own debt; and accordingly that B should be treated the
same way initial recipients are treated.

---

[24]   Dkt. 111, Plaintiffs' First Amended Complaint, p. 29 ¶ 84 n.21.

[25] Dkt. 116, Defendant's Motion, p. 10 ¶ 12.

[26] *See* Dkt. 111, Plaintiffs' First Amended Complaint, p. 22 ¶ 64.

*In re The Heritage Org., L.L.C.*, 413 B.R. 438, 495 (Bankr. N.D. Tex. 2009) (citation omitted).

Plaintiffs allege that Dondero owned and controlled Acis at the time of the Fraudulent Transfers. Specifically, Plaintiffs allege that Dondero was the trustee and beneficial owner of Acis limited partner the Dugaboy Trust, which in turn was a majority owner of Acis.[27] Plaintiffs further allege that "[o]ne consequence of Terry's termination was that his partnership interest in Acis was forfeited, leaving Okada and Dondero (beneficially) as the only equity owners of Acis."[28] Plaintiffs also allege that Dondero directed the Fraudulent Transfers "[i]n order to ensure that Josh Terry would collect nothing from Acis for his hard-fought Arbitration Award of nearly $8 million[.]"[29]

Returning to the example from *In re Heritage*, Plaintiffs essentially allege that Dondero is "B," and the Highlands entities that received the Fraudulent Transfers are all "A." *See In re Heritage*, 413 B.R. at 495. But for the Fraudulent Transfers, Dondero would have had to make good on Acis's obligation to pay the Arbitration Award—accordingly, Dondero should be treated the same way an initial transferee would be treated. *See id.* Moreover, Plaintiffs' allegation that Dondero orchestrated the Fraudulent Transfers "to ensure that Acis LP's very valuable business as portfolio manager was taken over by other Highlands and remained under Dondero's control"[30] is an unambiguous allegation that Dondero was the intended beneficiary of the Fraudulent Transfers.

Dondero's assertion that "Acis has failed to allege that the [Fraudulent] Transfers were made for the benefit of Defendant"[31] is false. Dondero's Motion lacks merit and should be denied.

---

[27] *Id.* at 12 ¶ 31 nn.9-10.

[28] *Id.* at 14 ¶ 40.

[29] *See* Dkt. 111, Plaintiffs' First Amended Complaint, p. 2 ¶ 1.

[30] *See* Dkt. 111, Plaintiffs' First Amended Complaint, p. 22 ¶ 64.

[31] Dkt. 116, Defendant's Brief, p. 10 ¶ 12.

**3. Defendant attacks Plaintiffs' Amended Complaint by misrepresenting this Court's prior rulings.**

Dondero asserts that "with respect to [Highland Capital], this Court has acknowledged that '[i]n 2015, Dondero and Okada sold their interests in [Highland] to a charitable remainder trust.'"[32] This assertion should be disregarded—first because it is an improper evidentiary argument in a Rule 12(b)(6) Motion, and second because it is false. By design or neglect, Dondero misquotes the Court—the Court never "found" any such thing.

Rule 12(b)(6) motions are decided only on the pleadings. On a Rule 12(b)(6) motion, the court must accept the facts alleged in the plaintiff's complaint as true and then determine whether those facts, taken as true, state a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1940. In other words, the question is not "Did Dondero own Highland Capital at the time of the Fraudulent Transfers?" but is instead "Did Plaintiffs *allege* that Dondero owned Highland Capital at the time of the Fraudulent Transfers?" For the reasons explained above, the answer to that question is yes. The Court's inquiry should stop here: Defendant's evidentiary arguments are improper and should be disregarded.

However, Plaintiffs must correct the record. Defendant quotes the Court as saying: "In 2015, Dondero and Okada sold their interests in Highland to a charitable remainder trust."[33] In fact, ***the Court did not say this***. What the Court actually said was materially different: "Mr. Dondero testified at the Trial that, three years ago, Messrs. Dondero and Akada sold their interests in Highland to a charitable remainder trust in exchange for a 15 year note receivable."[34] In other

---

[32] *See id.* at 13 ¶ 19.

[33] *Id.*

[34] *See In re Acis Capital Management, L.P.*, 584 B.R. 115, 119 n.4 (Bankr. N.D. Tex. 2018).

words, the Court did not "find" that Dondero had transferred away his interest in Highland Capital, but instead found merely that Dondero **said** he had transferred away his interest.

What makes Dondero's misrepresentation of this Court's alleged finding worse is that the Court also stated that it found Dondero's testimony lacking credibility. With respect to Highland Capital's witnesses, of which Dondero was just one, the Court stated that it found their testimony to be of "questionable reliability," that such testimony was "mostly uncorroborated (and self-serving)[,]" and that portions of it were not "credible or at all convincing."[35] The Court's only remarks as to the credibility of ***Dondero's*** testimony specifically read as follows:

> Additionally, Mr. Dondero (again, the President of each of the Alleged Debtors) testified that he had never even read the Arbitration Award. . . . [T]his court simply ***does not believe*** that he never read the Arbitration Award. . . . [I]t ***strains credulity*** to suggest Mr. Dondero never even read the Arbitration Award.

*In re Acis Capital Management, L.P.*, 584 B.R. at 131 ¶ 33 (emphasis added).

Moreover, Defendant's assertion that he never owned Highland Capital is belied by Defendant's own past representations. In 2020, Defendant filed no fewer than five proofs of claim in Highland Capital's bankruptcy case, representing that he was a "creditor, indirect equity security holder, and party in interest" in Highland Capital's bankruptcy. *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 2326350, at *1 n.4 (Bankr. N.D. Tex. June 7, 2021). As late as June 2021, this Court described Dondero as Highland Capital's "indirect beneficial equity owner[.]" *See id.* at *1.

Defendant's evidentiary arguments are not only improper—they are false. The Court should disregard Defendant's evidentiary arguments and deny Dondero's Motion.

---

[35] *Id.* at 131 ¶ 33.

**B.      Plaintiffs' Fraudulent Transfer claims are not untimely because they relate back to Plaintiffs' Original Complaint.**

Dondero seeks dismissal of Plaintiffs' Fraudulent Transfer claims on the grounds that the statute of limitations has passed.[36] But because the Fraudulent Transfer claims "relate back" to the date of Acis's Original Complaint under Federal Rule of Civil Procedure 15, applicable in this Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7015, Dondero's statute of limitations defense fails.

**1.      The "relation back" doctrine applies to fraudulent transfer claims brought in adversary proceedings.**

Under Section 546(a), Acis can initiate a fraudulent transfer action under the Bankruptcy Code for "2 years from the entry of the order for relief" or "1 year after the appointment or election of the first trustee," whichever occurs later. 11 U.S.C. § 546(a)(1). Acis instituted its adversary proceeding against Dondero on April 11, 2020.[37] Because the orders of relief were entered by this Court on April 13, 2020, Acis's fraudulent transfer claim would have been timely brought had it been pled in Acis's Original Complaint. Accordingly, if the claims asserted in the Amended Complaint relate back, they are not time-barred by Section 546(a).

This Court has specifically found that Rule 15 of the Federal Rules of Civil Procedure applies to fraudulent transfer claims brought under Section 548. *In re Texas E&P Operating, Inc.*, 2023 WL 3012268, at *10 ("This court agrees that the Newly Identified Transfers relate back to the Original Complaint under Rule 15(c) and are, therefore, not barred by section 546(a)."). So have other federal bankruptcy courts in the Fifth Circuit that have considered the issue. *See, e.g.*, *In re Juliet Homes, LP*, No. 07-36424, 2011 WL 6817928, at *8 (Bankr. S.D. Tex. Dec. 28, 2011)

---

[36] Dkt. 116, Defendants' Brief, p. 15 ¶¶ 25-27

[37] Dkt. 1.

("Because the newly alleged transfers relate back to the original complaint, they are not barred by limitations.").

### 2. Acis's fraudulent transfer claim is predicated on the same "conduct, transaction or occurrence" described in Acis's Original Complaint.

Under Rule 15, Acis's fraudulent transfer claim relates back because it is part of the same "conduct, transaction or occurrence":

> When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when: . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading.

*See* Fed. R. Civ. Pro. 15(c)(1).

This Court has previously defined a "course of conduct," for the purposes of relation back of a fraudulent transfer claim. *See In re Texas E&P*, 2023 WL 3012268, at *10. It stated that a "course of conduct upon which the relation back of avoidance claims may be predicated, has sometimes been held to refer to a scheme with a fraudulent purpose." *Id.* This is precisely the case here, where Acis alleged in its original complaint a scheme by Dondero to systematically and fraudulently strip Acis of valuable assets. Dondero was accordingly on notice of Acis's fraudulent transfer claims. *See id.* ("[A]llegations in the Original Complaint gave reasonable notice that the Trustee was still uncovering additional transfers.") (cleaned up) (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012)).

For each of the transactions that Acis now seeks to unwind as a fraudulent transfer, Acis previously pled them as part of its claim for breach of fiduciary duty. Dondero is accordingly aware of all the transactions and occurrences that Acis sues on, and the litigation and discovery has proceeded based on those allegations. No new transaction is now alleged to be fraudulent that was not already described in Acis's Original Complaint. Furthermore, Acis actually referred to the

transactions and occurrences as fraudulent transfers, including in the very second sentence of its

Original Complaint:

> In order to ensure that Josh Terry would collect nothing for his hard-fought Arbitration Award of close to $8 million against Acis, James Dondero ("Dondero"), through Highland Capital and many of its affiliates, orchestrated a massive scheme to ***fraudulently transfer*** Acis's assets, including its portfolio management rights that constituted the core of Acis's revenue stream, worth tens of millions of dollars (at a minimum), to the Highlands (defined below).

Dkt. 1 ¶ 1 (emphasis added).

The specific phrases "fraudulently transfer" and "fraudulently convey" are repeated in paragraph 26, 32, 73, and 103. These explicit references to fraudulent transfers were with respect to the ALF PMA Transfer, the ALF Share Transfer, the Note Transfer, and the transfer of the 2017-7 Equity and the 2017-7 Agreements, and the attempted transfer of the CLO-3 PMA. These are ***all*** the transfers for which Acis now brings a claim for fraudulent transfer under Section 548 of the Bankruptcy Code. Accordingly, Dondero was fully on notice of Acis's fraudulent transfer claim.

To the extent that Acis now asserts a claim that was not explicitly referred to as a fraudulent transfer in its Original Complaint, Dondero still was on notice and the claim relates back under Rule 15 because all such transfers are in connection with the same "scheme with a fraudulent purpose" of Dondero's to denude Acis of assets to avoid liability on the Terry arbitration award. *See In re Texas E&P*, 2023 WL 3012268, at *10. Indeed, Dondero was aware that complained-of transactions were even viewed by *this Court* as fraudulent transfers **as far back as January 2019**. *See, e.g., Dkt #830: Findings of Fact, Conclusions of Law and Order Granting Approval of Disclosure Statement and Confirming Third Amended Joint Plan for Acis Capital Management LP;* in *In Re: Acis Capital Management, L.P. et al.,* Case 18-30264-sgj11; at p. 24 ("The rights transferred in the ALF PMA Transfer appear to have been fraudulently transferred for no apparent value. The Court found in the Preliminary Injunction, and the Court finds again for purposes of

this Order, that the Chapter 11 Trustee has demonstrated a substantial likelihood of success on the merits of his claim to avoid the ALF PMA Transfer as a fraudulent transfer.").

Dondero's "statute of limitations" defense lacks merit, and his Motion should be denied.

## IV.    CONCLUSION

For reasons explained above, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss Portions of Plaintiffs' First Amended Complaint (Dkt. 115).

**Dated: March 27, 2024**                    Respectfully submitted,

                                     /s/ Thomas Cooke
                                     AHMAD, ZAVITSANOS & MENSING, PLLC
                                     Joseph Y. Ahmad
                                     Texas Bar No. 00941100
                                     Federal Bar No. 11604
                                     Shawn M. Bates
                                     Texas Bar No. 24027287
                                     Federal Bar No. 30758
                                     Thomas Cooke
                                     Texas Bar No. 24124818
                                     1221 McKinney St. Suite 2500
                                     Houston, Texas 77010
                                     (713) 655-1101 Telephone
                                     (713) 655-0062 Facsimile
                                     joeahmad@azalaw.com
                                     sbates@azalaw.com
                                     tcooke@azalaw.com

                                     **COUNSEL FOR ACIS CAPITAL
                                     MANAGEMENT, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 27, 2024, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case.

                                     /s/  Thomas Cooke
                                     Thomas Cooke