**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 18-30264-SGJ-11 |
| | § | Case No. 18-30265-SGJ-11 |
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | (Jointly Administered Under Case |
| LLC, | § | No. 18-30264-SGJ-11) |
|     Debtors | § | |
| | § | Chapter 11 |

| | | |
|---|---|---|
| ACIS CAPITAL MANAGEMENT, L.P., | § | |
| ACIS CAPITAL MANAGEMENT GP, | § | |
| LLC, Reorganized Debtors, | § | |
| | § | |
|     Plaintiffs, | § | |
| | § | Adversary No. 20-03060-SGJ |
| vs. | § | |
| | § | |
| JAMES DONDERO, FRANK | § | |
| WATERHOUSE, SCOTT ELLINGTON, | § | |
| HUNTER COVITZ, ISAAC | § | |
| LEVENTON, JEAN PAUL SEVILLA, | § | |
| THOMAS SURGENT, GRANT SCOTT, | § | |
| HEATHER BESTWICK, WILLIAM | § | |
| SCOTT, AND CLO HOLDCO, LTD., | § | |
| | § | |
|     Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANT JAMES DONDERO'S MOTION TO DISMISS
PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(B)(6) AND FED. R. BANKR. P. 7012**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Defendant James Dondero ("Defendant" or "Dondero") files this *Reply* (the "Reply") *in Support of Defendant James Dondero's Motion to Dismiss Portions of Plaintiffs' First Amended Complaint* (the "Motion") [Dkt. # 115], pursuant to FED. R. CIV. P. 12(b)(6) ("Rule 12(b)(6)"), made applicable by FED. R. BANKR. P. 7012. Defendant respectfully shows the Court as follows:

## ARGUMENTS AND AUTHORITIES

**A.   Acis's Response highlights it has not sufficiently pled (nor can it) the ability to recover from Dondero as a "transferee" under Section 550.**

1. Acis targets Dondero for the recovery of transfers made to Highland Capital Management, L.P. ("Highland") and Highland-owned affiliates (collectively the "Highlands") under 11 U.S.C. § 550 ("Section 550"). Specifically, Acis argues Dondero is the purported party for whose benefit Acis made transfers to the Highlands.

2. The Amended Complaint fails to sufficiently plead that Dondero is a "transferee" under Section 550. The only allegation that Acis makes to support its contention that Dondero is a transferee is that Dondero "owned or controlled" Highland, and Highland owned the Highlands. Thus, Acis's entire argument requires the Court to accept that: (1) Dondero "owned or controlled"[1] the Highlands; and (2) such ownership or control is sufficient to make Dondero a "transferee" or "an entity for whose benefit such benefit is made." 11 U.S.C. § 550. Acis's position is without merit and they have failed to assert a fraudulent transfer claim under Rule 12(b)(6).

3. ***First***, contrary to Acis's contention, Dondero did not own any of the Highlands at the time of the alleged transfers to the Highlands in 2016 and 2017. While Acis notes in its

---

[1] The Amended Complaint contains only two conclusory allegations that Dondero owned any interest. *See* Amended Complaint [Doc. 111], ¶ 40 ("Okada and Dondero were also the only equity owners of Highland Capital."); *id.*, ¶ 143 ("All these transfers were to 'insiders' because they were made to entities that Dondero owner or controlled[.]"). Those allegations are false, and the Court may take judicial notice of its prior findings of fact to the contrary.

**Reply in Support of Defendant's Motion to Dismiss Portions of
Plaintiffs' First Amended Complaint**                                                                                           Page 2

Response that "Rule 12(b)(6) motions are decided on allegations, not proof,"[2] the Amended Complaint admits that Highland (not Dondero) owned all of the Highlands.[3] Moreover, on a motion to dismiss, the Court may: (1) consider the documents attached to or incorporated by reference in the plaintiff's complaint;[4] (2) consider "facts of which judicial notice may be taken, and matters of public record;"[5] and (3) "take judicial notice of related proceedings and records in cases before the same court"[6] – which, here, support granting the Motion.

4. In fact, the Court previously found that Highland has been owned by a charitable trust (and not Dondero) since 2015.[7] The Court should not allow Acis's claim to proceed based on allegations contrary to facts the Court previously found following evidentiary hearings.[8]

5. While Acis attempts to claim the Court never found Highland has been owned by a charitable trust (and not Dondero) since 2015, the portions of the *Court's Findings of Fact and Conclusions of Law in Support of Orders for Relief Issued after Trial on Contested Involuntary Bankruptcy Petitions* (the "Order")[9] the Motion cites fall under the heading labeled "**Findings of Fact**."[10]

6. In addition, Acis's attempts to discount the Court's prior findings are without merit. Acis attempts to discount the Court's prior finding that, "Mr. Dondero testified at the Trial that, three years ago, Messrs. Dondero and Akada [*sic*] sold their interests in Highland to a charitable

---

[2] *Id.* at p. 4.
[3] Motion [Doc. 116], ¶ 15.
[4] *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).
[5] *Id.*
[6] *MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985).
[7] Case 18-30264-sjg, BK Doc. 118 at n.4; *id.*, ¶ 25(d)–(e).
[8] *Willard*, 336 F.3d at 379 (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996)); *MacMillan Bloedel*, 760 F.2d at 587.
[9] Motion [Doc. 116], ¶ 15 n.37 (*citing* Case 18-30264-sjg, BK Doc. 118 at n.4; *id.* ¶ 25(d)–(e))
[10] *Id.* (emphasis added).

remainder trust in exchange for a 15 year note receivable."[11] Specifically, Acis argues that, because the Court noted Dondero "testified" about that point (rather than framing it as a finding of fact in the absolute), the Court did not accept the information because the Court rejected all of Dondero's testimony as uncredible. However:

a. while the Court found the testimony on behalf of the debtors, *i.e.,* Acis, was "of questionable reliability,"[12] the Court specifically noted in the Order the particular facts about which Dondero testified that it did not accept,[13] and the Court did not question statements about the ownership of Highland; and

b. Regardless, the second portion of the Order cited in the Motion contains an affirmative finding about the ownership of Highland Holding, without qualification regarding the credibility of the witnesses who provided such information.[14]

Read as a whole, the Order indisputably contains findings of fact about the ownership of Highland, which the Court can and should now consider in determining that Dondero had no ownership interest in any of the purported Highland transferees at the time of the alleged transfers.

7. **Second**, even if Dondero did own and control the Highlands at the time of the transfers, that is not sufficient to impose liability on him, individually, for transfers made to Highland or the Highlands. The Court rejected an identical argument in *In re Heritage Organization, L.L.C*,[15] finding testimony that "(i) at various points in time, [Transferor] transferred some funds to the Ettman Trust; (ii) [alleged Transferee] owned or controlled 92% of Heritage and was the person who directed the Transfers; (iii) the major portion of Heritage's income ended up on [alleged Transferee's] personal tax return, by way of various pass-through entities; and (iv) the bulk of [alleged Transferee's] assets were in the Ettman Trust, of which [alleged Transferee] was

---

[11] Case 18-30264-sjg, BK Doc. 118 at n.4 (emphasis added).
[12] *Id.*, ¶ 33.
[13] *See, e.g., id.* (questioning Dondero's testimony that he never read the arbitration award).
[14] *Id.*, ¶ 25(d)–(e) (Highland Holdings "is not owned by Highland Capital Management L.P. Rather, HCLOF is owned by HarbourVest, a Boston institutional investor (49%); a charitable trust (49%); and Highland employees (2%)").
[15] *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 496 (N.D. Tex. Bankr. 2009).

trustee" was insufficient to support a finding that the alleged transferee was the "entity for whose benefit" the transfers at issue were made.[16]

8. The Western District of Texas reached the same result in *In re Arabella Petroleum Company, LLC*.[17] There, the Trustee sought to recover from a principal of the entity-transferee by arguing the principal was the person for whose benefit the transfers were made. The Court rejected that argument, emphasizing that:

> the Trustee must prove the benefit and must prove that the benefit was quantifiable and commensurate with the property transferred. And here, as discussed below, the Trustee has proven no direct benefit to [the principal], and any indirect benefits to [the principal] as a shareholder, director, or officer, resulting from the transfers of property to [the entity] . . . without more, ***are not enough***. And because the entity must actually receive a benefit from the transfer, intent to benefit alone is insufficient for recovery under 550(a), contrary to the Trustee's assertions.[18]

Acis does not attempt to distinguish these authorities, which are fatal to its Amended Complaint. Indeed, Acis cites no authority whatsoever to support its attempt to assert a fraudulent transfer claim against Dondero, individually, when he never received the funds and does not qualify as an "entity for whose benefit such transfer was made" under Section 550

9. That failure is telling—but not surprising—given that imputing liability to Dondero on the facts Acis alleges does not further the purpose of an avoidance action. Section 550's recovery framework aims to return an estate to the position it would have occupied notwithstanding certain transfers.[19] Where, as here, an alleged transferee was not the recipient of the "transferred funds,"[20] there is no benefit to the estate to maintain an action against that defendant, given there is nothing to recover from him for the estate's benefit.

---

[16] *Id.* at 496.
[17] *In re Arabella Petroleum Company, LLC*, 647 B.R. 851 (Bankr. W.D. Tex. 2022) (emphasis added).
[18] *Id.* at 873.
[19] *See generally* 11 U.S.C. § 550; *Matter of DeBerry*, 945 F.3d 943, 947-48 (5th Cir. 2019).
[20] *See id.* at 946.

10. ***Third***, Acis relies on the fact that it pled that Dondero is the alter ego of Highland, which owns the Highlands.[21] But Acis's Amended Complaint fails to plausibly plead that Dondero is Highland's alter ego as required by Delaware law, and it makes no attempt to plead that Dondero is the alter ego of the Highlands. "To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the companies 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness ... [is] present.'"[22] This two-prong test must be applied to, and satisfied at, each level or layer of affiliate ownership applicable within the multi-faceted entity structure.[23] With respect to each entity structure, the Court analyzes the following factors: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders."[24]

11. <u>Here, the entirety of Acis's allegations that Dondero is Highland and the Highland's alter ego state:</u>

> "Delaware law permits a court to pierce the corporate veil of a company where there is fraud or where it is in fact a mere instrumentality of its owner." . . . As previously found by this Court, the actions of Highland Capital and its affiliates <u>were</u> controlled by Dondero. As described in detail herein, Dondero masterminded and directed Highland Capital and its affiliates to commit the series of fraudulent transfers and other fraudulent schemes in order to denude Acis of its assets and transfer Acis's valuable business to the Highlands. Dondero controlled and used each of the Highlands to carry out this fraud against Acis, and each of the Highlands was a mere instrumentality of Dondero. Accordingly, Dondero is an alter ego of each of the Highlands, and Dondero should therefore be held liable for any actions of the Highlands pleaded herein.[25]

---

[21] Response to Motion [Doc. 122], p. 5 ("Plaintiffs allege . . . that Dondero was Highlands' alter ego.")
[22] *In re Moll Industries, Inc*., 454 B.R. 574, 587 (Bankr. D. Del. 2011).
[23] *Id.* (citing *In re The Heritage Org., L.L.C.,* 413 B.R. 438, 514 (Bankr. N.D. Tex. 2009)).
[24] *Id.*
[25] Amended Complaint [Doc. 111], ¶¶ 128 – 131 (internal case citation omitted) (emphasis added).

12. Those allegations make no effort to establish how any of the Highlands was undercapitalized from inception or failed to observe corporate formalities, pay dividends, or maintain corporate records. Acis does not allege Dondero siphoned funds from any Highland entity or that Highland had no legitimate business purpose. The Amended Complaint fails to plead facts that, taken as true, show Dondero is the alter ego of Highland or the Highlands.

13. In sum, Acis: (1) cannot allege that Dondero, individually, owned Highland; (2) has admitted that Highland owned the Highlands; (2) has failed to even allege that Dondero was the transferee—initial, mediate, subsequent, or otherwise—of a single dollar of the value Highland (or any other of the Highlands) realized; (3) has failed to allege facts that demonstrating Dondero is the person "for whose benefit such transfer was made" under Section 550; and (4) has failed to allege Dondero is the alter ego of any Highland entity. Even if it did, such conclusory allegations are insufficient to support a claim in light of the Court's previous rulings.[26]

## B. The Fraudulent Transfer Claims are untimely and cannot relate back to the Original Complaint.

14. The Fraudulent Transfer Claims should also be dismissed because they are untimely under the applicable statutes of limitations and repose and cannot relate back to the Original Complaint. As discussed in the Motion, Acis brought its Fraudulent Transfer Claims for the first time *nearly six years after the Relief Date*. Further, despite having a detailed awareness of these claims, Acis waited almost four years after its deadline under Section 546(a) to bring its claims.

15. Acis insists the Fraudulent Transfer Claims relate back to the Original Complaint under FED. R. CIV. P. 15 and can thus proceed. As an initial matter, Acis wholly ignores the relation-back doctrine cannot save its claims under TUFTA and DUFTA's constructive fraud

---

[26] The Court need not accept "unwarranted deductions" in reviewing the sufficiency of a complaint. *Modelist v. Miller*, 445 Fed. App'x. 737, 739 (5th Cir. 2011); *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

provision. Those claims are statutes of repose—not limitations—and are not subject to equitable override by Rule 15(c) or any other procedural rule.[27] Because these claims were not timely pleaded in the Original Complaint, they must be dismissed irrespective of the relation-back rule.

16. The remaining Fraudulent Transfer Claims do not satisfy Rule 15(c)'s relation-back rule as applied to avoidance claims. "New avoidance claims are generally treated as separate, distinct transactions that do not relate back under Rule 15(c)."[28]

17. Acis relies on the Court's framework from *In re Texas E&P Operating* for avoidance claims to relate back to the Original Complaint:

> (1) The Amended Complaint alleges that the Additional Transfers were part of a course of conduct alleged in the Original Complaint; and (2) the Original Complaint notified the parties . . . that the Trustee could pursue avoidance of the Additional Transfers associated with the course of conduct alleged in the Original Complaint." were part of a course of conduct alleged in the Original Complaint.[29]

In *Texas E&P Operating*, the Trustee timely asserted fraudulent transfer claims under Section 546 in the Original Complaint. The "notice" concerned future claims for *additional* fraudulent transfers within the time period alleged in the Original Complaint.[30] Here, in contrast, Acis never asserted any avoidance claim in the Original Complaint. Neither the Original Complaint, the Amended Complaint, nor the Response to the Motion reference any investigation or other intermediary course of action to uncover additional fraudulent transfers. In short, Acis delayed six years after

---

[27] *See In re Texas E&P Operating*, No. 19-03231, 2023 WL 3012268, at *11-12 (Bankr. N.D. Tex. Apr. 19, 2023); *In re American Housing Foundation*, 543 B.R. 245, 258 (Bankr. N.D. Tex. 2015); *Cheswold Volunteer Fire Co v. Lambertson Const. Co.*, 489 A.2d 413, 421 (Del. 1984).

[28] *In re Uplift RX, LLC*, 625 B.R. 364, 375 (Bankr. S.D. Tex. 2021).

[29] *In re Texas E&P Operating*, 2023 WL 3012268, at *9 (quoting *In re Uplift RX*, 625 B.R. at 376).

[30] *See id.* at *9-10; *see also Uplift RX*, 625 B.R. at 377 ("Without allegations of a common course of conduct, the Original Complaint could not have put the defendants on notice that the Additional Transfer claims were forthcoming."); *In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) ("[A]llegations in the Original Complaint . . . gave reasonable notice that the Trustee was still uncovering *additional* transfers and seeking any amounts that may have been transferred as part of that scheme[.]").

the Relief Date to assert the Fraudulent Transfer Claims, when it could have very easily done so at the outset of this proceeding.

18. The Court should not apply Rule 15(c) to allow Acis's purposeful and unjustified six-year delay in bringing the Fraudulent Transfer Claims, especially given it was well-aware of the details of the underlying transfers. If courts were to allow such amendments, claimants could in effect toll the statutes of limitations for avoidance claims at the start of any lawsuit when they draft sufficiently broad allegations of a "course of conduct" coupled with vague promises to bring the avoidance claims at some point in the future.[31] Acis's delay has no justification and the Court should dismiss the Claims as untimely under Section 546.

**C.    Dondero's lack of opposition to Acis's request to amend its complaint does not equate to approval of the content in the Amended Complaint.**

19. The introduction to the Response nonsensically suggests Dondero somehow approved of the (untimely) content of Acis's Amended Complaint by agreeing not to contest a motion for leave to amend its Original Complaint.[32]

20. Rule 15(a)(2) empowers a court to "freely" grant a party leave to amend its pleading "when justice so requires."[33] Denial of leave must be predicated on a "substantial

---

[31] *See In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir. 1989) (holding the relation back doctrine "is designed . . . to accommodate the statute of limitations policies that prevent stale claims from being litigated and permit their repose . . . It was not designed to provide a means either to circumvent or to expand the limitations period."); *In re Vitamin C Antitrust Litigation*, 995 F. Supp.2d 125, 131 (E.D.N.Y. 2014) (rejecting relation-back claim to add a new party initially thought to be a "wrong defendant" because "[a]dopting plaintiffs' expansive theory of relation back would gut the policies underlying periods of limitation, because filing a complaint would effectively become an indefinite toll of the statue of limitations . . . Relation-back would swallow the general principles of statutes of limitations."); *Bernard L. Madoff Inv. Sec.*, 468 B.R. at 633 (rejecting relation-back argument for certain fraudulent transfer claims when, inter alia, (i) the Trustee chose to pursue the transfers from certain defendants in proceedings separate from the main adversary proceeding, and (ii) the defendants reasonably inferred the Trustee made a conscious decision to exclude the transfers from the main adversary).

[32] Acis's Resp. at p.3 ("Dondero represented that he was unopposed, i.e. he did not raise any of the typical arguments against granting leave to amend such as prejudice, undue delay, or futility. Instead, a month later, Dondero filed the instant Motion to Dismiss[.]").

[33] FED. R. CIV. P. 15(a)(2).

reason."[34] Considering the trial of this cause is not set for another six months, Dondero determined it was unlikely the Court would identify a "substantial reason" for denying an amendment. For that reason, and in the spirit of professionalism and keeping with *Dondi Properties Corp. v. Commerce Sav. And Loan Ass'n.*,[35] Dondero did not contest Acis's motion. But that does not keep Dondero from holding Acis accountable to the separate and distinct pleading standard imposed by FED. R. CIV. P. 8 and the law governing fraudulent transfers and avoidance actions. The fact that Dondero did not oppose Acis's motion for leave does not mean the resulting pleading properly states a claim or is timely under the applicable statutes of limitation and repose.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter a Report and Recommendation granting the relief requested in this Motion (and Brief), dismissing the Fraudulent Transfer Claims (Count 5) and Alter Ego (Count 3), and that this Court grant Defendant such other and further relief to which he is justly entitled.

---

[34] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000).
[35] 121 F.R.D. 284 (N.D. Tex. 1988).

Dated: April 10, 2024

Respectfully submitted,

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
Dave Wishnew
Texas State Bar No. 24052039
dwishnew@cwl.law
Haleigh Jones
Texas State Bar No. 24097899
hjones@cwl.law
Alexandra Ohlinger
Texas State Bar No. 24091423
aohlinger@cwl.law
Dallas Flick
Texas State Bar No. 24104675
dflick@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

*Counsel for Defendant James Dondero*

### CERTIFICATE OF SERVICE

The undersigned certifies that, on April 10, 2024, a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Michael J. Lang*
Michael J. Lang